IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. _____

| | |
|---|---|
| DAVID P. PUKIS, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) **COMPLAINT** |
| INDUSTRIAL SUPPLY SOLUTIONS, INC., | ) **(Jury Trial Demanded)** ) ) ) |
| Defendant. | ) ) |

NOW COMES Plaintiff David P. Pukis, Jr. by and through the undersigned counsel, hereby files this Complaint against Industrial Supply Solutions, Inc., and alleging and showing unto this Honorable Court as follows:

## PARTIES

1. Plaintiff, David P. Pukis, Jr., is a citizen and resident of Rowan County, North Carolina.

2. Defendant Industrial Supply Solutions, Inc. ("ISSI" or "Defendant") is a domestic corporation formed under the laws of North Carolina located at 804 Julian Road, Salisbury, NC 28147 and with its principal place of business in Rowan County, North Carolina.

## JURISDICTION & VENUE

3. Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows:

4. This Court has original jurisdiction federal question jurisdiction over Plaintiff's claims herein under 28 U.S.C. § 1331 for claims brought under the Americans with Disabilities Act (the "ADA") for unlawful discrimination, retaliation, and failure to accommodate.

1

5. This Court has further supplemental jurisdiction under 28 U.S.C. §1367 for the claims asserted for discrimination in violation of North Carolina public policy including N.C.G.S. §§143-422.2 and 168A.

6. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in Rowan County, North Carolina, and conducts substantial business in Rowan County, North Carolina, which is located within this judicial district.

7. Venue is proper in this judicial district because Defendant has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Rowan County, North Carolina, which is located within this judicial district.

## COVERAGE ALLEGATIONS

8. Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows:

9. At all times relevant to this action, Plaintiff was a "qualified individual" covered by the protections of the ADA, as amended, within the meaning of 42 U.S.C. § 12111(8).

10. At all times relevant herein, Defendant was a "covered entity" engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(2) and had at least fifteen (15) or more employees each working day.

11. At all times relevant herein, Plaintiff was an "employee" within the meaning of 42 U.S.C. §12111(4).

12. Defendant is an "employer" within the meaning of 42 U.S.C. §12111(5).

13. Defendant employed at least fifteen (15) employees at all relevant times.

14. Plaintiff satisfied his obligation to exhaust his administrative remedies by timely filing a Charge of Discrimination against Defendant with the Equal Employment Opportunity

Commission ("EEOC") (Charge No. 430-2022-02600) alleging discrimination and retaliation based on his disability on November 9, 2022. The EEOC issued a Notice of Right to Sue and sent it to Plaintiff on August 14, 2023. Plaintiff received the Notice of Right to Sue on August 14, 2023.

15. Plaintiff timely brings this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## FACTUAL ALLEGATIONS

16. Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows:

17. Since on or about January of 2019, Plaintiff was diagnosed with Epilepsy, causing him to suffer from Grand Mal/Tonic Clonic seizures ("Medical Condition" or "Condition").

18. Plaintiff's Medical Condition causes plaintiff to suffer from seizures, loss of consciousness, dizziness, tunnel vision, metallic taste, anxiety, hearing loss, and loss of concentration.

19. Plaintiff was prescribed Levetiracetam ER also known as Keppra ER in or about January 2019 for his Medical Condition. Plaintiff suffered from a number of side effects as a result of this medication which also limited Plaintiff's major life activities.

20. Because Plaintiff suffers from this Medical Condition, Plaintiff's major life activities such as sleep, urinary control, concentration, short term memory, and being in public, are substantially impaired and limited.

21. Plaintiff had an interview on or about May 27, 2021, during which Plaintiff informed his interviewer and supervisor to be, Rocky Corbett, about his Epilepsy and seizures.

22. On or about June 1, 2021, Plaintiff accepted an offer of employment to work as a

3

C-Support Procurement Materials Buyer with Defendant ISSI for $45,000 per year with pay increase of an additional $3,000 after ninety (90) days and a performance review.

23. Plaintiff began his employment with ISSI on or about June 14, 2021.

24. Because of Plaintiff's Medical Condition, Plaintiff is subject to frequent Nocturnal Grand Mal/Tonic Clonic seizures. For example, on November 5, 2021, Plaintiff suffered a seizure upon which Emergency Medical Services ("EMS") had to be dispatched. Plaintiff suffered another seizure on December 29, 2021. Up to this point, all of Plaintiff's seizures had occurred only at night.

25. On March 2, 2022, Plaintiff suffered his first daytime Grand Mal/Tonic Clonic seizure. While Plaintiff was halfway into his truck, Plaintiff suffered a seizure which caused him to go unconscious. Plaintiff was discovered lying halfway out of his truck by a contractor that Plaintiff had just previously met. The contractor called emergency services and Plaintiff was transported to the emergency room. While there, Plaintiff was advised not to drive for six (6) months or until cleared to drive by a neurologist.

26. While in transport to the emergency room, Plaintiff was given treatment and came to consciousness. Plaintiff emailed his immediate supervisors Rocky Corbett and Trish Sponaugle, as well as the human resources ("HR") manager, Kelly Lescalleet to inform them of Plaintiff's condition and that he was being transported to the emergency room.

27. Upon returning to work the next day, Plaintiff emailed Rocky Corbett, Trish Sponaugle, and Kelly Lescalleet of his new driving limitations for the next six (6) months approximately.

28. On or about March 20, 2022 in the early morning, Plaintiff suffered another Nocturnal Grand Mal/Tonic Clonic seizure. Plaintiff's wife called emergency services and

4

Plaintiff was transported by ambulance to the emergency room. Plaintiff was kept overnight in the hospital. Plaintiff also emailed Rocky Corbett, Trish Sponaugle, and Kelly Lescalleet at approximately 2:55 AM that same day to inform them of Plaintiff's situation.

29. That same week between March 21, 2022 and March 25, 2022, Plaintiff verbally asked Kelly Lescalleet in HR if ISSI could provide Plaintiff an accommodation to work from home or some other alternative accommodation in order to accommodate Plaintiff's Medical Condition while working at ISSI. Plaintiff only requested an accommodation for a limited amount of time until his EEG test was completed and Plaintiff was cleared by a neurologist.

30. Plaintiff in the past as well as other employees in the same position as Plaintiff were previously allowed to work from home for other reasons during the COVID pandemic. Plaintiff's employment position did not require his physical attendance in the office and allowing Plaintiff to work from home as an accommodation for his Medical Condition was not an undue hardship or burden on ISSI.

31. Kelly Lescalleet did not provide an answer to Plaintiff but told Plaintiff that she would "ask and look into it."

32. Plaintiff suffered another seizure on or about May 4, 2022. Plaintiff was found lying on the floor unconscious by his wife when she arrived home from work. It is unclear how long Plaintiff was unconscious before being discovered.

33. On or about June 24, 2022, Plaintiff again asked Kelly Lescalleet about the status of his accommodation request. Kelly again stated that she would "look into it."

34. That same day, Plaintiff then spoke with his supervisor Rocky Corbett about his Medical Condition and accommodation request. Rocky stated that although he would have to look into it, allowing Plaintiff to work from home as an accommodation should not be a problem

5

and inquired with an IT specialist about setting Plaintiff up with an additional monitor and company laptop to take home.

35. On or about July 7, 2022, a co-worker found Plaintiff having another Grand Mal/Tonic Clonic seizure at Plaintiff's work desk at ISSI.

36. As a result of Plaintiff's now second daytime seizure, Plaintiff's doctor increased his medication, Keppra ER.

37. On July 11, 2022, Plaintiff returned to work and again spoke with his immediate supervisor, Rocky Corbett, about his Medical Condition and the side effects of his increased epilepsy medication.

38. On or about July 15, 2022, Rocky Corbett called Plaintiff into his office to discuss an email that Plaintiff had sent the day before regarding backorders. During the meeting, Plaintiff expressed his frustration with ISSI because Plaintiff had not yet been granted an accommodation, offered an accommodation, or even contacted to discuss a potential or possible accommodations based on Plaintiff's Medical Condition. Plaintiff further expressed to Rocky Corbett that because ISSI had not engaged in the interactive process with him or granted him an accommodation, Plaintiff was going to explore his rights with respect to requesting an accommodation.

39. Rocky Corbett then confirmed to Plaintiff that he knew about Plaintiff's Medical Condition and accommodation request from approximately four (4) months prior, and that he would "look[] into what [ISSI] can do about it."

40. At the end of the meeting on July 15, 2023, Plaintiff and Rocky Corbett both shook hands and apologized to each other for the various misunderstandings and previous discussions regarding the backorders, and agreed to continue working together to achieve company goals.

41. Plaintiff then informed ISSI that he had another doctor's appointment on July 18,

6

2022. When Plaintiff arrived at his appointment on July 18, 2022, Plaintiff noticed that his job position was posted online.

42. The next day on July 19, 2022, Plaintiff again asked Kelly Lescalleet about his accommodation request. Kelly stated that she would "have to get with Rocky and Trish [Sponaugle]" (the Director of Procurement) to determine what could be done.

43. Later that day on July 19, 2022, Rocky Corbett brought Plaintiff into his office to let him know that they are on the same team and to have a talk about how things were going. During that meeting, Plaintiff informed Rocky Corbett that he had just met with Kelly in HR about having to again request an accommodation for his Medical Condition and driving restrictions as he has had several close calls while driving while also experiencing side effects from the medication for his Medical Condition. Rocky again informed Plaintiff that he would have to look into it. At the end of that meeting, Plaintiff and Rocky hugged and continued work.

44. The next day on July 20, 2022, Plaintiff was called into a meeting under the belief that Plaintiff's accommodation request was finally going to be addressed since Plaintiff's original request approximately four (4) months prior. However instead, ISSI issued Plaintiff a write-up for allegedly raising his voice in the meeting a week prior.

45. During that meeting on July 20, 2022, Trish Sponaugle and Kelly Lescalleet stated that the raising of Plaintiff's voice had to be documented but that his employment was not being terminated or suspended for raising his voice and stated that the write-up was just a warning.

46. Thereafter, Plaintiff again asked about his accommodation request and about why it had not been addressed. Rocky Corbett responded that they were not prepared to give Plaintiff an answer and that they would follow up with Plaintiff as to the status of his accommodation request. To date, the only response Plaintiff has received about his request for a reasonable

7

accommodation is that someone will "look into it."

47. However, the next day on July 21, 2022, Defendant terminated Plaintiff's employment—never having granted Plaintiff an accommodation or engaging in the interactive process to identify a reasonable accommodation for Plaintiff.

48. Defendant's actions were intentional, willful, wanton, and taken with reckless disregard to Plaintiffs state and federally protected rights including Plaintiff's rights under the ADA.

## FIRST CLAIM FOR RELIEF
**(Failure to Accommodate in Violation of Section 102(a) and (b)(5)(A) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112(a) and (b)(5)(A))**

49. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

50. Plaintiff is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on his actual or perceived disability and request for accommodation.

51. Plaintiff was disabled within the meaning of the ADA in that he had and continues to have physical impairments that substantially limited one or more major life activities, including but not limited to sleep, urinary control, concentration, short term memory, and being in public.

52. Plaintiff is a qualified individual under the ADA in that he possesses the legitimate skill, experience, education, and other requirements of his employment position with Defendant, and could perform the essential functions of the employment position with or without reasonable accommodation.

53. Defendant otherwise perceived Plaintiff as disabled during Plaintiff's

8

employment and at the time of Plaintiff's termination.

54. Defendant had sufficient notice of Plaintiff's disability and reasonable accommodation request when Plaintiff informed Defendant of his disability and request for reasonable accommodation multiple times as alleged above.

55. Defendant discriminated against Plaintiff on the basis of Plaintiff's disability in violation of the ADA by failing and refusing to provide Plaintiff with a reasonable accommodation for Plaintiff's disability when Plaintiff requested a reasonable accommodation.

56. Defendant further discriminated against Plaintiff on the basis of Plaintiff's disability in violation of the ADA by failing and refusing to engage in the interactive process to identify a reasonable accommodation for Plaintiff.

57. An accommodation for Plaintiff was available and providing an accommodation for Plaintiff did not create an undue hardship on Defendant.

58. As a direct, proximate, and foreseeable cause of Defendant's actions, Plaintiff suffered lost back and front pay, benefits associated with his employment, and has suffered and continues to suffer severe physical and emotional distress, anxiety, depression, embarrassment, and humiliation. Plaintiff is entitled to general and special damages, economic damages, punitive damages, and attorney's fees and costs as permitted by law.

## **SECOND CLAIM FOR RELIEF**
**(Disability Discrimination in Violation of Section 102(a) and (b)(5)(A) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112(a) and (b)(5)(A))**

59. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

60. Plaintiff is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on his actual or perceived disability and request for

accommodation.

61. Plaintiff was disabled within the meaning of the ADA in that he had and continues to have physical impairments that substantially limited one or more major life activities, including but not limited to sleep, urinary control, concentration, short term memory, and being in public.

62. Plaintiff is a qualified individual under the ADA in that he possesses the legitimate skill, experience, education, and other requirements of his employment position with Defendant, and could perform the essential functions of the employment position with or without reasonable accommodation.

63. Defendant otherwise perceived Plaintiff as disabled during Plaintiff's employment and at the time of Plaintiff's termination.

64. Plaintiff was subjected to an adverse employment action because of Plaintiff's disability when Defendant terminated Plaintiff from employment on or about July 21, 2022 in violation of the ADA.

65. Plaintiff was performing his job at a level that met and fulfilled the legitimate expectations of Defendant ISSI at the time of his termination.

66. The above facts and allegations raise a reasonable inference of unlawful discrimination.

67. As a direct, proximate, and foreseeable cause of Defendant's actions, Plaintiff suffered lost back and front pay, benefits associated with his employment, and has suffered and continues to suffer severe physical and emotional distress, anxiety, depression, embarrassment, and humiliation. Plaintiff is entitled to general and special damages, economic damages, punitive damages, and attorney's fees and costs as permitted by law.

## THIRD CLAIM FOR RELIEF
(Retaliation in Violation of the ADA, as amended 42 U.S.C. § 12203(a))

68. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

69. In addition to the above allegations, Defendant further unlawfully retaliated against Plaintiff in violation of the ADA by terminating Plaintiff's employment with Defendant because he requested a reasonable accommodation multiple times.

70. Plaintiff engaged in a protected activity when he requested a reasonable accommodation on multiple occasions as alleged above.

71. After the last time Plaintiff inquired about his reasonable accommodation request, Defendant terminated Plaintiff's employment.

72. A causal connection exists between Plaintiff's protected activities of requesting a reasonable accommodation and Defendant's adverse action of terminating Plaintiff's employment because of Plaintiff's reasonable accommodation request.

73. Defendant's actions were intentional, willful, and taken with reckless disregard to Plaintiffs state and federally protected rights including Plaintiff's rights under the ADA.

74. Defendant's reason for terminating Plaintiff's employment is not true or genuine and is a pretext for discrimination based upon Plaintiff's disability and request for reasonable accommodation.

75. There may be additional facts unknown by Plaintiff which may also constitute retaliation in violation of the ADA.

76. As a direct, proximate, and foreseeable cause of Defendant's actions, Plaintiff suffered lost back and front pay, benefits associated with his employment, and has suffered and continues to suffer severe physical and emotional distress, anxiety, depression, embarrassment,

and humiliation. Plaintiff is entitled to general and special damages, economic damages, punitive damages, and attorney's fees and costs as permitted by law.

## FOURTH CLAIM FOR RELIEF
### (Wrongful Termination in Violation of Public Policy, N.C.G.S. § 143-422.1 *et seq*., and N.C.G.S. § 168A)

77. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

78. It is the public policy of the state of North Carolina to protect and safeguard the rights and opportunities of all persons to seek, obtain and hold employment without discrimination.

79. The adverse employment actions taken by Defendant including the termination of Plaintiff's employment was done for unlawful purposes in violation of the public policy of the State of North Carolina, specifically, the North Carolina Equal Practices Act, N.C.G.S. § 143-422.1 *et seq*., including N.C.G.S. § 143-422.2 which makes discrimination based upon disability or handicap an unlawful practice in North Carolina.

80. Plaintiff was terminated because of his disability, and/or Defendant's perception of Plaintiff's disability.

81. Plaintiff was wrongfully terminated in violation of the Retaliatory Employment Discrimination Act, N.C.G.S. § 95-240 *et seq*.

82. There may be additional facts unknown by Plaintiff which may also constitute retaliation in violation of the ADA.

83. Defendant's actions were intentional, willful, and/or taken with reckless disregard of Plaintiff's rights under the ADA.

84. A causal connection exists between Plaintiff's protected activities of requesting a reasonable accommodation and Defendant's adverse action of terminating Plaintiff's

12

employment because he requested a reasonable accommodation.

85. Defendant's conduct was intentional and made with reckless indifference to Plaintiffs state and federally protected rights.

86. Defendant's reason for terminating Plaintiff's employment is not true or genuine and is a pretext for discrimination based upon Plaintiff's disability.

87. Defendant is liable to Plaintiff for wrongful termination in violation of Title I of the Americans with Disabilities Act of 1990, as amended, and North Carolina public policy, including N.C.G.S. § 143-422.1 *et seq.*, and N.C.G.S. § 168A.

88. As a direct, proximate, and foreseeable cause of Defendant's actions, Plaintiff suffered lost back and front pay, benefits associated with his employment, and has suffered and continues to suffer severe physical and emotional distress, anxiety, depression, embarrassment, and humiliation. Plaintiff is entitled to general and special damages, economic damages, punitive damages, and attorney's fees and costs as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby respectfully requests that this Court enter judgment in favor of Plaintiff as against Defendant and enter an Order as follows:

A. Permanently enjoin Defendant from engaging in the above alleged unlawful practices, policies, customs, and usages set forth herein and from continuing an and all other practices shown to be in violation of applicable law;

B. Awarding Plaintiff compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, emotional distress, mental anguish, anxiety, depression, embarrassment, and humiliation;

C. Awarding Plaintiff punitive damages as against Defendant for all claims as

allowed by law;

D. Attorney's fees and costs of this action;

E. Pre-judgment and post-judgment interest; and

F. Granting any other such relief that the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby respectfully requests a trial by jury on all issues so triable.

This 26th day of October 2023                                  *By Counsel*

                                                               */s/ Kyle T. Watson*
                                                               Kyle T. Watson
                                                               NC State Bar No. 57014
                                                               **THE WATSON LAW OFFICE, PLLC**
                                                               301 McCullough Drive, Suite 400
                                                               Charlotte, North Carolina 28262
                                                               Telephone: (704) 246-3514
                                                               Facsimile: (704) 885-5028
                                                               E-mail: kwatson@watsonattorney.com
                                                               *ATTORNEY FOR DEFENDANT*

14